**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| REIGN 1 LLC and REIGN MONITORING SOLUTIONS LLC, <br><br> Plaintiffs, <br><br> Versus <br><br> DONALD B. CONNER; REIGN RMC 2.0 LLC, AND DCON MONITORING CONTROLS INCORPORATED <br><br> Defendants. | Case No. _____ <br><br><br> JURY TRIAL DEMANDED |

**AMENDED\* VERIFIED COMPLAINT FOR**
**DAMAGES AND INJUNCTIVE RELIEF**
*\*Amended only to include verification page inadvertently omitted*

Plaintiffs Reign 1 LLC ("Reign 1") and Reign Monitoring Solutions LLC ("RMS") (together, "Plaintiffs" or "Reign"), by and through undersigned counsel, allege as follows:

**NATURE OF THE CASE**

1.        This is an action for federal trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114; federal unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); common law trademark infringement and unfair competition under Florida law; design patent infringement under 35 U.S.C. §§ 271 and 289; and breach of contract.

#111711929v1                                    1

2.      Defendant Donald B. Conner, while serving as a paid independent contractor of Reign 1's predecessor and of RMS, secretly formed two competing entities, copied Plaintiffs' patented Visual Tank Level monitoring system, marketed and offered to sell knock-off units to Plaintiffs' customers under marks that are confusingly similar to Plaintiffs' federally registered trademarks, diverted Plaintiffs' vendor relationships, and refused to return Plaintiffs' property and confidential business information. Plaintiffs seek damages and injunctive relief.

## PARTIES

3.      Plaintiff Reign 1 LLC is a Florida limited liability company with a principal place of business at 181 Key Deer Blvd., #405, Big Pine Key, Florida 33043. Reign 1 is the successor in interest to Reign RMC, LLC, a Florida limited liability company that was dissolved on April 16, 2024. Reign 1 owns all right, title, and interest in the trademarks and patents identified below, including by virtue of a Short Form Trademark Assignment effective March 25, 2024.

4.      Plaintiff Reign Monitoring Solutions LLC is a Florida limited liability company. RMS is a related company of Reign 1 within the meaning of 15 U.S.C. §§ 1055 and 1127. RMS is the operating company through which Plaintiffs design, sell, install, and service the products covered by Reign 1's patents and trademarks. RMS uses Reign 1's trademarks with Reign 1's authorization and subject to Reign 1's control over the nature and quality of the goods and services offered under those

#111711929v1                               2

marks. RMS is also the authorized user and exclusive licensee of Reign 1's design patent identified below, with the right to make, use, offer to sell, sell, and import products embodying the patented design in the United States.

5.      Defendant Donald B. Conner is an individual domiciled, upon information and belief, in the State of Arkansas. Mr. Conner is sometimes referred to in his communications as "Donnie" Conner.

6.      Defendant Reign RMC 2.0 LLC ("Reign 2.0") is a Wyoming limited liability company with a registered address at 30 N Gould St., Ste. R., Sheridan, Wyoming 82801. Upon information and belief, Mr. Conner caused Reign 2.0 to be formed on or about November 18, 2025.

7.      Defendant DCON Monitoring Controls Incorporated ("DCON") is a Wyoming corporation with a registered address at 30 N Gould St., Ste. R., Sheridan, Wyoming 82801. Upon information and belief, Mr. Conner caused DCON to be incorporated on or about January 16, 2026.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over the federal claims in this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1338(b). The Court has supplemental jurisdiction over the related state and common law claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same case or controversy and share a common nucleus of operative fact with the federal claims.

#111711929v1                              3

9.        This Court has personal jurisdiction over Defendants. On June 20, 2018, Mr. Conner and Reign RMC, LLC executed an Independent Contractor Agreement (the "Conner ICA"), which is attached hereto as Exhibit 1. Reign RMC, LLC assigned the Conner ICA to Plaintiff Reign 1, which has since operated as the Company under the Agreement. Mr. Conner accepted and performed under the Conner ICA following such assignment and thereby ratified the assignment.

10.       Under the Conner ICA, Mr. Conner agreed to the exclusive venue of courts in Duval County, Florida. As a contractor for Reign, Mr. Conner repeatedly performed work on behalf of Reign within the State of Florida, accessed Reign's confidential information within the State of Florida, and called on customers within the State of Florida. This action arises out of those contacts.

11.       Reign 2.0 and DCON, acting through Mr. Conner, were well aware of the Conner ICA. Mr. Conner cannot shield himself or his businesses from liability by incorporating them outside of the State of Florida. DCON and Reign 2.0 have advertised goods and services competitive with Plaintiffs' within the State of Florida. Mr. Conner, DCON, and Reign 2.0 have attempted to poach at least two of Plaintiffs' customers: Rain for Rent, which operates within the State of Florida, and Pytheas Energy Inc., which is based in Aventura, Florida.

12.       Defendants knew that Reign was a Florida business with a base of operations in Florida. Defendants knew that their actions as alleged in this Complaint

#111711929v1                                    4

would deceive customers in Florida and would cause Plaintiffs to suffer damages in Florida.

13.    Venue is proper pursuant to 28 U.S.C. § 1391 and Mr. Conner's agreement to the choice-of-venue clause in the Conner ICA.

## GENERAL ALLEGATIONS

### A. Plaintiffs' Business and History.

14.    Plaintiffs design, manufacture, sell, install, and service remote monitoring equipment and controls for a variety of industries, including oil and gas and wastewater. Certain of Plaintiffs' customers use above-ground storage tanks for liquids such as chemicals, brine water, fresh water, and oil.

15.    Determining the level of fluid in an above-ground storage tank has long been a frustration. Visually inspecting such tanks can be difficult and dangerous. Typically, a pump truck having a large storage unit must physically visit each tank, and a worker must exit the vehicle and personally inspect the tank. The worker may have to view the tank fluid level through a window in or near the top of the tank, or physically climb up the outside of the tank and drop a weighted line into the tank. Mechanical tank level indicators are notoriously unreliable. Climbing the tank can be hazardous, and exposes workers to the gases and vapors that accumulate in the tank itself.

#111711929v1                    5

16.        Plaintiffs invented a solution. Reign developed a system for detecting tank levels and displaying them on an external indicator that is readily visible day or night. The system provides faster, more reliable tank level and performance monitoring. Reign named its solution the Visual Tank Level monitoring system (the "VTL monitoring system").

17.        The VTL monitoring system includes one or more light emitting diode ("LED") assemblies, which may be mounted vertically end-to-end on the exterior of an above-ground storage tank, and a controller. As the level of fluid in the tank rises or falls, monitoring equipment feeds fluid level data to the controller, which turns on or off the LED lights corresponding to the tank fluid level. In one configuration, a nearly full tank with an installed VTL monitoring system visually displays most or all of the LED lights turned on.

18.        The system may also be configured to enhance safety. The LED assemblies may display two or more colors or patterns. Below a certain fluid level, the LED assemblies may display one color or pattern. Above a certain fluid level, the LED assemblies may display a second color or pattern to warn onlookers of the safety risks associated with an overfilled tank.

### B. Reign 1's Trademarks.

19.        Reign 1 owns United States Trademark Registration No. 5,968,349 for the standard character mark REIGN RMC, registered January 21, 2020, in

International Class 9 for electronic equipment comprising electric sensors, programmable logic controllers, circuit boards, remote terminal units, and electric switches, sold as a unit, to monitor and control pumps, tanks, meters, flow meters, tank level monitoring equipment, valves, and pump jacks in the fields of public utilities and oil and gas production (the "'349 Registration").

20.     Reign 1 owns United States Trademark Registration No. 5,968,352 for the design mark consisting of a stylized tower-and-signal design, registered January 21, 2020, for the same goods as the '349 Registration (the "'352 Registration").

21.     Reign 1 also owns United States Trademark Application Serial No. 98/177,870 for the mark REIGN MAKER, filed September 13, 2023, and United States Trademark Application Serial No. 99/308,577 for the mark REIGN with tower design, filed July 29, 2025 (collectively with the '349 Registration and the '352 Registration, the "Reign Marks").

22.     The '349 Registration and the '352 Registration are valid, subsisting, and in full force and effect. The '349 Registration and the '352 Registration constitute prima facie evidence of the validity of the registered marks, of the registration of those marks, of Reign 1's ownership of those marks, and of Reign 1's exclusive right to use the registered marks in commerce on the identified goods. 15 U.S.C. § 1057(b).

23.     RMS uses the Reign Marks in commerce with Reign 1's authorization and subject to Reign 1's control over the nature and quality of the goods and services offered under those marks. All such use inures to the benefit of Reign 1. 15 U.S.C. § 1055.

24.     Plaintiffs continue to use the REIGN RMC word mark and the associated tower-and-signal design mark on Plaintiffs' control boxes, electrical equipment, marketing materials, websites, and shipping documentation in the ordinary course of business.

25.     As a result of Plaintiffs' substantial, continuous, and exclusive use of the Reign Marks since long before the acts of Defendants complained of herein, the Reign Marks have acquired extensive goodwill, are widely recognized by customers and prospective customers in the relevant trade, and have become associated in the minds of consumers exclusively with Plaintiffs.

### C. Reign 1's Design Patent.

26.     On May 27, 2025, the United States Patent and Trademark Office issued United States Design Patent No. D1,076,697, entitled "Visual Indicator for Above-Ground Storage Tank" (the "'697 Patent"). A copy of the '697 Patent is attached hereto as Exhibit 2.

27.     The '697 Patent is a design patent that claims the ornamental design for a visual indicator used in connection with an above-ground storage tank, as shown

#111711929v1                               8

and described in the figures of the patent. The '697 Patent is a continuation-in-part of Application No. 29/886,679, now U.S. Patent No. D1,000,987 (the "'987 Patent").

28. The '697 Patent identifies as inventors Richard Vanek, Rodney Montrose, and Donald Conner. As a condition of his independent contractor relationship and his role in developing the VTL monitoring system, Mr. Conner assigned all of his right, title, and interest in the '697 Patent (and its parent application and issued parent patent) to Reign RMC, LLC.

29. Reign 1 is the owner of the '697 Patent by virtue of its succession to all assets of Reign RMC, LLC under a Plan of Winding-Up and Liquidation effective March 25, 2024, including all patents, patent applications, and patent rights of Reign RMC, LLC.

30. Reign 1 has granted RMS an exclusive license to make, use, offer to sell, sell, and import products embodying the design claimed in the '697 Patent in the United States.

31. The '697 Patent is valid and enforceable. The '697 Patent is entitled to the presumption of validity under 35 U.S.C. § 282.

32. Plaintiffs have provided actual and constructive notice of the '697 Patent to Defendants. As a named inventor and signatory of the assignment of the underlying application, Mr. Conner has had actual knowledge of the '697 Patent and

the rights of the patentee at all relevant times. Knowledge of the '697 Patent is also imputed to Reign 2.0 and DCON through Mr. Conner.

### D. Mr. Conner's Relationship with Reign.

33. Mr. Conner was an early member of the technical team at Reign RMC, the predecessor company to Reign 1, and is a named inventor on Reign's design patents, and played a key role in developing the VTL monitoring system technology and in selling that technology to Plaintiffs' customers.

34. On June 20, 2018, Mr. Conner signed the Conner ICA to memorialize his independent contractor relationship with Reign, agreeing to provide, among other services, technology consulting, installation, programming, and sales services with respect to certain remote monitoring systems, including the VTL monitoring system.

35. In the Conner ICA, Mr. Conner agreed to "keep in strict secrecy and confidence Confidential Information … to which Conner has access during Conner's engagement with the Company." Ex. 1, § 9. The Conner ICA defines "Confidential Information" to include information, whether written, electronic, or oral, concerning or related to the Services, including the customers or clients of the Company or any of the Company's related entities, pricing or cost information, sales, margins, market information, market studies, client or customer information, vendors, suppliers, personnel, management, computer information systems or software, financial condition, financial statements, taxes, contracts or legal matters, trade secrets or

#111711929v1                                           10

other proprietary information, know-how, concepts, ideas, jobs, and prospective work of the Company.

36.          In addition to restrictions on the retention and use of confidential information, the Conner ICA restricted Mr. Conner's ability to compete against Reign and to solicit Reign's customers during the term of his independent contractor relationship and following its termination, as follows:

a) Except as otherwise provided herein, Conner shall not, either directly or indirectly, anywhere within any state where the Company conducted business during the Term, for the period during the Term of this Agreement and for the one (1) year period immediately following the termination or expiration of Conner's engagement hereunder, either as an independent contractor, partner, joint venturer, or as an officer, director, stockholder, member, equity owner, representative, agent, contractor, employee, or salesperson, for himself or for any person, firm, partnership, corporation, limited liability company, or other entity or person, or otherwise, enter into, engage in, be employed by, consult with or otherwise gain economic benefit, remuneration or value, directly or indirectly, from (i) any business or person which is in competition with the business of the Company or any of its related entities … along with any of their successors or assigns, as it is then carried on at the time of such termination; or (ii) any business which is a

#111711929v1                              11

supplier, vendor, customer, client or member of the Company or any of the above listed related entities.

b) Conner shall not, either directly or indirectly (other than in connection with Conner's engagement by the Company to provide Services for the Company), during the Term of Conner's engagement with the Company and for the three (3) year period immediately following termination or expiration of Conner's engagement hereunder, for any reason, whether as an independent contractor, consultant, agent, partner, joint venturer, or as an agent, employee, officer, director or stockholder, for any other person, firm, partnership, company or other entity or otherwise, (i) solicit, hire, contact or engage or aid others doing so any customer of the Company or prospective customer of the Company (as hereinafter defined) for the purpose of soliciting or enticing away any said customer, their business or patronage as to the business of the Company, (ii) solicit any of the employees or independent contractors of the Company to terminate their employment or engagement with the Company, (iii) accept engagement with or seek remuneration from any of the Company's customers, or (iv) accept employment or engagement with or seek remuneration or other value or economic benefit from any of the customers of the Company.

c) The term customer shall mean those persons and/or entities with whom the Company transacts or transacted business since the inception of the Company including any affiliates or related party(ies) of any such customer. A prospective customer of the Company shall be defined as a business or individual that has received a proposal for services in the twenty-four (24) month period prior to the date of termination of engagement of the Services hereunder for any reason.

d) The period of time during which Conner is prohibited from engaging in such business practices pursuant to Sections 9(a) and 9(b) shall be extended by any length of time during which Conner is in breach of such covenants.

e) It is understood and agreed by Conner and the Company that if any portion of the covenants set forth in Sections 9(a) and 9(b) are held to be unreasonable, arbitrary, or against public policy, then such portion of such covenant shall be considered divisible as to time. Conner and the Company agree that if any court of competent jurisdiction determines the specified time period to be unreasonable, arbitrary, or against public policy, then a lesser time period which is determined to be reasonable, non-arbitrary, and not against public policy may be enforced against Conner. Conner and the Company agree that the foregoing covenants are appropriate when

#111711929v1                                        13

considered in light of the nature and extent of the business to be conducted by the Company.

f) It is understood by and between the parties hereto that the foregoing restrictive covenants set forth in this Agreement are essential elements of this Agreement, and that, but for the agreement of Conner to comply with such covenants, the Company would not have agreed to enter into this Agreement and to engage Conner. Such covenants by Conner shall be construed as agreements independent of any other provision in this Agreement and shall survive the termination or expiration of this Agreement, by either party. The existence of any claim or cause of action of Conner against the Company, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by the Company of such covenants.

g) The restrictive covenants in this Section 9 shall be assignable and transferable by the Company to any successor or assign pursuant to a merger, sale of assets or stock reorganization or otherwise and any such successor and/or assign shall fully enforce the terms of this Agreement, including but not limited to the provisions of this Section 9.

Ex. 1, §§ 9–10.

#111711929v1                                    14

37.    Through his independent contractor relationship with Reign, Mr. Conner had access to substantial confidential and proprietary information of Plaintiffs, including customer pricing; source code and other computer code related to Reign's application and its specific VTL monitoring system configurations for its customers; Reign's financial information and historical financial data; Reign's customer lists and customer contact information; and Reign's sales and marketing strategies.

38.    While working with Reign, Mr. Conner was provided a company-owned laptop containing this information and additional confidential information and was entrusted with protecting that information.

39.    In correspondence with a third party customer, Mr. Conner acknowledged his independent contractor status and that he assigned his patent rights to Reign.

### E. Conner Forms Reign 2.0 and DCON and Competes Unlawfully.

40.    On November 18, 2025, and unbeknownst to Plaintiffs at the time, Mr. Conner caused Defendant Reign 2.0 to be formed in the State of Wyoming.



41.        Shortly thereafter, on January 16, 2026, and also unbeknownst to Plaintiffs at the time, Mr. Conner caused Defendant DCON to be incorporated in the State of Wyoming.



42.     To obscure his involvement, Mr. Conner's name appears nowhere on the publicly available formation documents for either Reign 2.0 or DCON. The formation documents were filed through a third-party service provider, Registered Agents Inc.

43.     On information and belief, principals or representatives of Pytheas Energy Inc., a Reign customer, including Joshua Zuker and Harvey Schutzbank, participated in the financing, formation, and operation of DCON. On March 11, 2026, Mr. Schutzbank, using the email address hschutzbank@gmail.com, transmitted to Mr. Conner and Mr. Zuker DCON's EIN number, articles of incorporation, corporate bylaws, and a shareholder agreement. On information and

belief, Mr. Zuker and Mr. Schutzbank executed a DocuSign captioned "DCON Ownership Structure" reflecting ownership interests in DCON.

44.        On information and belief, as early as February 7, 2026, Harvey Schutzbank arranged for the lease of a motor vehicle to Mr. Conner in support of Mr. Conner's work for Reign 2.0 and DCON, further reflecting the operational and financial involvement of Pytheas Energy principals in the formation and operation of Defendants' competing enterprise.

45.        Mr. Conner registered, or caused to be registered, the domain name dcon-rmc.com, and caused that domain to be used as a public website to advertise the goods and services of DCON and Reign 2.0. The website displayed the heading "Reign 2.0 – A DCON COMPANY."

#111711929v1                                18



46.        In addition to copying the name of Plaintiffs' business, the logo used

by Reign 2.0 and DCON is an exact replica of the tower-and-signal design mark

covered by the '352 Registration, with the addition of the "2.0" and "A DCON

Company" designations.

47.        Reign's Registered REIGN RMC / Tower-and-Signal Design Mark

(Reg. Nos. 5,968,349 and 5,968,352):

#111711929v1                           19



48.    Reign 2.0 / DCON Logo Used by Defendants:



49.    Mr. Conner also caused Harvey Schutzbank to obtain and use the email address accounting@dcon-rmc.com to communicate with Plaintiffs' customers concerning DCON, including by submitting vendor applications and W-9 documents on DCON's behalf to Rain for Rent.

*F. Conner Manufactures and Markets a Knock-Off VTL System.*

#111711929v1                    20

50.     On February 18, 2026, Mr. Conner solicited work from Rain for Rent, an existing Reign customer, using his Reign email address, and directed Rain for Rent to send vendor setup information to a personal email address unaffiliated with Reign.

**donnie@reignrmc.com Donnie Conner**                    Wednesday, February 18, 2026 at 12:56:45 PM Pacific Standard Time
To: MBOYD@rainforrent.com Madison Boyd

Yes Madison, that is correct. Thank you.

Donnie Conner / IOT Field & System Design Engineer
1-833-GoReign. Ext 1
"We Do HARD Things"

On Wed, Feb 18, 2026 at 12:55 PM Madison Boyd <MBOYD@rainforrent.com> wrote:

Hey Donnie,

Just wanted to re confirm that the email address you will want us to use when sending the vendor set up paperwork is remotemonitoringcontrols@gmail.com correct?

Thank you,

*Madison Boyd*

Product Line Manager | Rain for Rent

3404 State Road | Bakersfield, CA. 93308

O: 661-387-6129 | C: 661-431-8101

mboyd@rainforrent.com

51.     Mr. Conner, on behalf of Reign 2.0 and DCON, prepared and transmitted to Rain for Rent a quote for a "DCON Stand-Alone VTL System" (the "DCON Quote"), a copy of which was later provided to Plaintiffs by Rain for Rent.

52.     Through the DCON Quote and accompanying communications, Defendants offered to sell to Rain for Rent units that embody the ornamental design claimed in the '697 Patent, branded with marks that are confusingly similar to the Reign Marks, including "Reign 2.0" and the DCON variant of the tower-and-signal design.

#111711929v1                    21

53.     In offering and quoting these units, Mr. Conner made cosmetic and component substitutions, including replacing portions of the outer housing and replacing Reign's logo on the housing with the "Reign 2.0 / DCON" logo. Mr. Conner described these units to Rain for Rent as a "new product," notwithstanding that the units embody the patented Reign design and were derived from Plaintiffs' proprietary product.

54.     Defendants' unauthorized offer to sell and sale of samples and units of the knock-off VTL system constitutes infringement of the '697 Patent.

55.     Defendants' use of the marks "Reign 2.0," "Reign 2.0 / DCON," and the modified tower-and-signal design on and in connection with the same or directly competing goods is likely to cause confusion, mistake, or deception as to the source, sponsorship, affiliation, or approval of Defendants' goods.

### G. Conner Diverts Customers, Vendors, and Inventory.

56.     On information and belief, Mr. Conner used his access to Plaintiffs' vendor and supplier information to introduce a third party, Northstar, to Reign's sensor supplier Gamicos, so that Northstar could purchase Gamicos sensors directly and circumvent Plaintiffs.

57.     Mr. Conner used internal Slack communications with Reign employees to inquire about Plaintiffs' vendor contact information and wholesale electrical-components purchases. On information and belief, Mr. Conner used the information

obtained through those inquiries to source components for the knock-off VTL system offered by Reign 2.0 and DCON, in an attempt to circumvent the '697 Patent and replicate Plaintiffs' product.

58.     Mr. Conner forwarded internal communications between himself and Rain for Rent to representatives of Pytheas Energy, including Mr. Zuker and Mr. Schutzbank, and told them to "prepare asap."

59.     Mojo Operating, a Reign customer that, upon information and belief, is owned or controlled by Pytheas Energy, owes Plaintiffs $29,272.08 in past-due invoices for hardware ($26,032.08) and subscription services ($3,240.00). Mr. Conner caused approximately 14 Reign devices to be delivered to Mojo without payment, in direct contravention of Plaintiffs' instructions to obtain full payment before shipment.

60.     Beginning in or before November 2025, Plaintiffs were in advanced discussions with Site Pro and Direct Midstream, two prospective customers that anticipated doing at least $2 million in business with Plaintiffs in 2026. To date, Plaintiffs have received no orders from those customers. On information and belief, Mr. Conner diverted those opportunities by offering and selling DCON's knock-off product to those customers.

61.     Plaintiffs' investigation also uncovered that, while being paid by Reign for full-time work, Mr. Conner publicly promoted himself and his competing businesses, including by publishing posts on LinkedIn using the name "Reign 2.0."

62.     Upon information and belief, Mr. Conner, using his Reign email account, set up new cellular service vendor accounts that were not known to Plaintiffs and that were intended to serve Mr. Conner's competing businesses, while posing as a Reign employee seeking new services.

63.     Upon information and belief, Mr. Conner used his Reign email account to communicate with customers and ship devices that were not entered into Plaintiffs' systems, so that Mr. Conner could bill those customers through his competing businesses without Plaintiffs' knowledge.

### H. Termination, Refusal to Return Property, and Damages.

64.     On April 27, 2026, upon learning the extent of Mr. Conner's actions, Reign, through counsel, sent notice to Mr. Conner, through counsel, that the independent contractor relationship was terminated and that Mr. Conner was to return all Reign property in his possession immediately.

65.     The same day, Reign retained a private investigator who traveled with local police officers to Mr. Conner's home in an effort to retrieve Reign's property. In response to the request, Mr. Conner turned over a laptop computer to the

investigator. Inspection of that computer revealed that it was an old computer that was no longer in use for Reign business.

66.     The computer Reign issued to Mr. Conner contains Plaintiffs' highly sensitive customer pricing information, financial data, source code, vendor information, and other non-public data, which would allow a competitor such as Reign 2.0 or DCON to replicate, undercut, and unlawfully divert Plaintiffs' business. Mr. Conner was aware of Plaintiffs' demand that he immediately return the computer and willfully retained it.

67.     Only after repeated demands did Mr. Conner return the computer on May 16, 2026. Mr. Conner returned the computer without a charging cable, so Reign has been delayed in accessing and inspecting the computer. Reign intends to perform a forensic analysis on the computer to determine whether any of its trade secrets or confidential business information stored on the computer have been retained by Mr. Conner.

68.     Mr. Conner has also failed to return nearly $25,000 worth of Reign inventory and additional company-owned tools and equipment, with an MSRP value in excess of $60,000. Plaintiffs have documented these missing items, and Mr. Conner remains in possession of property belonging to Plaintiffs.

69.     Plaintiffs have been damaged by Defendants' conduct, including by loss of market share, lost business opportunities, dilution of the Reign Marks, loss

of goodwill, loss of revenue from existing and prospective customers, and incurring attorney's fees and other fees and costs in attempting to obtain the return of Reign's information and property.

### COUNT I – FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)
### (Against All Defendants)

70.     Reign 1 is the owner of the federally registered Reign Marks, including the '349 Registration and the '352 Registration. RMS uses the Reign Marks with Reign 1's authorization and as a related company under 15 U.S.C. § 1055, and all such use inures to the benefit of Reign 1.

71.     Without Plaintiffs' authorization, Defendants have used, and continue to use, in commerce, marks that are confusingly similar to the Reign Marks, including "Reign 2.0," "Reign 2.0 – A DCON COMPANY," and a variant of the registered tower-and-signal design, in connection with the offering, advertising, promotion, and sale of goods that directly compete with the goods covered by the Reign Marks.

72.     Defendants' use of the foregoing marks is likely to cause confusion, to cause mistake, or to deceive as to the source, origin, sponsorship, affiliation, or approval of Defendants' goods and services.

73.     Defendants' acts of infringement have been undertaken with knowledge of the Reign Marks and with the intent to trade on the goodwill associated

#111711929v1                        26

with the Reign Marks. Defendants' acts are willful within the meaning of 15 U.S.C. § 1117.

74. Plaintiffs have suffered and will continue to suffer irreparable harm as a result of Defendants' infringement, for which Plaintiffs have no adequate remedy at law. Plaintiffs are entitled to injunctive relief, monetary damages, Defendants' profits, treble damages, costs, and attorney's fees pursuant to 15 U.S.C. §§ 1116 and 1117.

**COUNT II – FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(A))**
**(Against All Defendants)**

75. Plaintiffs have used the Reign Marks, and the trade dress and commercial impression associated with their VTL monitoring system, in interstate commerce in connection with their goods and services.

76. Defendants have used in commerce, in connection with the offering, advertising, promotion, and sale of competing goods and services, words, terms, names, symbols, and devices, including "Reign 2.0," "Reign 2.0 – A DCON COMPANY," the dcon-rmc.com domain, the donnie@reign2-0.com email address, and a variant of the registered tower-and-signal design, that constitute false designations of origin and false or misleading descriptions and representations of fact.

#111711929v1                                   27

77.    Defendants' acts are likely to cause confusion, mistake, or deception as to Defendants' affiliation, connection, or association with Plaintiffs, and as to the origin, sponsorship, or approval of Defendants' goods, services, and commercial activities by Plaintiffs, in violation of 15 U.S.C. § 1125(a).

78.    Defendants' acts are willful and have caused, and will continue to cause, Plaintiffs to suffer irreparable harm, for which Plaintiffs have no adequate remedy at law. Plaintiffs are entitled to injunctive relief and to all available monetary remedies under 15 U.S.C. §§ 1116 and 1117.

## COUNT III – COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION (FLORIDA)
### (Against All Defendants)

79.    Plaintiffs have used, and continue to use, the Reign Marks in commerce in Florida and elsewhere. As a result of that use, Plaintiffs have acquired, and continue to hold, common law trademark rights in the Reign Marks in Florida.

80.    Defendants have used and continue to use marks that are identical or confusingly similar to the Reign Marks, in connection with the advertising, promotion, offering for sale, and sale of competing goods and services in Florida and elsewhere.

81.    Defendants' acts are likely to cause confusion, mistake, or deception among consumers and prospective customers as to the source, sponsorship,

#111711929v1                    28

affiliation, or approval of Defendants' goods and services and constitute trademark infringement and unfair competition under Florida common law.

82.    Defendants' acts have caused, and will continue to cause, Plaintiffs to suffer monetary damages and irreparable harm. Plaintiffs are entitled to injunctive relief, monetary damages, disgorgement of Defendants' profits, and punitive damages.

## COUNT IV – DESIGN PATENT INFRINGEMENT (35 U.S.C. §§ 271, 289)
### (Against All Defendants)

83.    Reign 1 is the owner of all right, title, and interest in the '697 Patent, with full standing to bring this claim. RMS is the exclusive licensee of the '697 Patent with rights sufficient to join in this action and recover damages for infringement.

84.    Defendants have, without authority, made, used, offered to sell, and sold, and continue to make, use, offer to sell, and sell, in the United States, products that embody the ornamental design claimed in the '697 Patent, including the units described in the DCON Quote provided to Rain for Rent.

85.    An ordinary observer, familiar with the prior art, would be deceived into believing that Defendants' accused units are the same as the design claimed in the '697 Patent.

#111711929v1                        29

86. Defendants' acts constitute infringement of the '697 Patent under 35 U.S.C. § 271(a). Mr. Conner additionally induced and contributed to the infringement by Reign 2.0 and DCON, within the meaning of 35 U.S.C. § 271(b) and (c).

87. Defendants' infringement has been and is willful. Mr. Conner is a named inventor of the '697 Patent. Mr. Conner had actual knowledge of the '697 Patent and assigned all of his rights in the underlying application to Reign's predecessor. Defendants' conduct is exceptional within the meaning of 35 U.S.C. § 285.

88. In correspondence with a third party customer, Mr. Conner acknowledged his independent contractor status and that he assigned his patent rights to Reign.

89. Plaintiffs have been damaged by Defendants' infringement and are entitled to recover, at Plaintiffs' election, Defendants' total profits under 35 U.S.C. § 289 or Plaintiffs' damages adequate to compensate for the infringement, in no event less than a reasonable royalty, together with interest and costs under 35 U.S.C. § 284. Plaintiffs are also entitled to enhanced damages and attorney's fees under 35 U.S.C. §§ 284 and 285. Plaintiffs have suffered and will continue to suffer irreparable harm and are entitled to injunctive relief under 35 U.S.C. § 283.

## COUNT V – BREACH OF CONTRACT
### (Against Mr. Conner)

90. The Conner ICA is a valid and enforceable agreement under Florida law.

91. Mr. Conner knowingly and voluntarily executed the Conner ICA.

92. Reign RMC, LLC validly assigned the Conner ICA to Plaintiff Reign 1.

93. The Conner ICA requires, among other things, Mr. Conner to abide by the following restriction on the use of Reign's confidential information: to "keep in strict secrecy and confidence Confidential Information … to which Conner has access during Conner's engagement with the Company." Ex. 1, § 9.

94. The Conner ICA defines "Confidential Information" to include information, whether written, electronic, or oral, concerning or related to the Services, including the customers or clients of the Company or any of the Company's related entities, pricing or cost information, sales, margins, market information, market studies, client or customer information, vendors, suppliers, personnel, management, computer information systems or software, financial condition, financial statements, taxes, contracts or legal matters, trade secrets or other proprietary information, know-how, concepts, ideas, jobs, and prospective work of the Company.

95.     The Conner ICA further places the restrictions on Mr. Conner's competition and solicitation conduct set forth in Sections 9 and 10 of the Conner ICA, as quoted in paragraph 25 above.

96.     The restrictions on competition and solicitation are valid and enforceable under Florida law. Fla. Stat. § 542.335, which was in effect at the time of the execution of the Conner ICA, allows the enforcement of restrictive covenants that are "reasonable in time, area, and line of business."

97.     The restrictive covenants contained in the Conner ICA are necessary to protect multiple legitimate business interests of Plaintiffs, including the protection of Plaintiffs' trade secrets, the protection of Plaintiffs' confidential business information that may not qualify for trade secret protection, and the protection of customer relationships that Mr. Conner was responsible for developing and maintaining.

98.     The restriction on competition is limited to states in which Reign operates. The restriction on competition lasts one year, and the restriction on solicitation lasts three years, which are reasonable under the circumstances and are designed to protect Plaintiffs' information and customer relationships.

99.     During the term of the Conner ICA and following its termination, Mr. Conner has solicited business from multiple Reign customers, has attempted to sell competing VTL monitoring systems to them, has solicited Reign's suppliers and

vendors, and has retained and used Reign's confidential information, all in breach of the Conner ICA.

100. Mr. Conner has further breached the Conner ICA by failing and refusing to return Reign's property, including the Reign-issued computer, inventory, tools, and equipment in his possession.

101. As a direct and proximate result of Mr. Conner's breaches, Plaintiffs have suffered damages, including loss of revenue, lost or damaged customer relationships, lost goodwill, and the necessity of incurring attorney's fees and costs to stop the breach.

## JURY DEMAND

102. Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Reign 1 LLC and Reign Monitoring Solutions LLC respectfully request that the Court enter judgment in their favor and against Defendants Donald B. Conner, Reign RMC 2.0 LLC, and DCON Monitoring Controls Incorporated, jointly and severally as appropriate, and grant the following relief:

103. Judgment in favor of Plaintiffs and against Defendants on Counts I through IV, awarding Plaintiffs all damages allowed by law, including Plaintiffs' actual damages, Defendants' profits, enhanced and treble damages where available,

#111711929v1                                          33

Defendants' total profits under 35 U.S.C. § 289, reasonable royalties under 35 U.S.C. § 284, prejudgment and post-judgment interest, costs, and reasonable attorney's fees under 15 U.S.C. § 1117 and 35 U.S.C. §§ 284 and 285;

104. Judgment in favor of Plaintiffs and against Mr. Conner on Count V, awarding damages for breach of the Conner ICA, together with interest, costs, and reasonable attorney's fees;

105. Entry of a temporary restraining order, preliminary injunction, and permanent injunction prohibiting Defendants, and any person or entity acting in concert with them, from: (a) using the Reign Marks or any mark confusingly similar thereto; (b) making, using, offering for sale, selling, or importing in the United States any product that embodies the design claimed in the '697 Patent; (c) using, disclosing, or disseminating Plaintiffs' confidential and proprietary information; (d) soliciting Plaintiffs' customers, employees, vendors, or suppliers in violation of the Conner ICA; and (e) violating the non-compete covenant of the Conner ICA;

106. An order requiring forensic examination of computing devices, cellphones, external storage devices, and email and file-storing or file-sharing accounts used by or in the custody and control of Defendants, and requiring the return of all property of Plaintiffs in Defendants' possession, custody, or control;

107. An order under 15 U.S.C. § 1118 for the destruction or delivery up of all infringing articles and materials in Defendants' possession, custody, or control,

and an order transferring the dcon-rmc.com and reign2-0.com domain names, and any other infringing domains, to Plaintiffs;

108.    An award of exemplary, enhanced, and punitive damages to the fullest extent permitted by law; and

109.    Such other and further relief as the Court deems just and proper.

Respectfully submitted,

JONES WALKER LLP


*/s/ Daniel E. Harrell*
Daniel E. Harrell
Florida Bar No. 105222
13 Palafox Place
Suite 200
Pensacola, FL 32502
dharrell@joneswalker.com
jdallman@joneswalker.com
T: 448.239.6470
F: 448.239.6500

Joseph F. Lavigne, Lead Counsel (*pro hac vice application forthcoming*)
Jacob Pritt (*pro hac vice application forthcoming*)
201 St. Charles Ave., Ste. 5100
New Orleans, LA 70170
jlavigne@joneswalker.com
jpritt@joneswalker.com
T. 504.582.8000
F. 504.589.8610

*Counsel for Plaintiffs*

#111711929v1                    35

**Exhibits**

Exhibit 1    Independent Contractor Agreement (Conner ICA)
Exhibit 2    U.S. Design Patent No. D1,076,697

#111711929v1                              36

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

REIGN 1 LLC and REIGN MONITORING
SOLUTIONS LLC,

     Plaintiffs,

Versus

DONALD B. CONNER; REIGN RMC 2.0
LLC, AND DCON MONITORING
CONTROLS INCORPORATED

     Defendants.

Case No. _____

JURY TRIAL DEMANDED

**VERIFICATION**

I, Richard Vanek, hereby swear under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief, which is based on my personal knowledge and my review of the regularly maintained records of Reign 1 LLC and Reign Monitoring Solutions LLC:

1.     I am of the age of majority and am competent to testify under oath.

2.     I am a Co-Founder and Managing Member of Reign 1 LLC and Reign Monitoring Solutions LLC.

3.     I have reviewed the allegations contained in the *Verified Complaint for Damages and Injunctive Relief* being filed on behalf of Reign 1 LLC and Reign Monitoring Solutions LLC in the above-captioned litigation. The allegations are true and correct to the best of my knowledge, information and belief.

Dated: May 20, 2026       _____

                   RICHARD VANEK
                   MANAGING MEMBER
                   REIGN 1 LLC AND REIGN MONITORING SOLUTIONS LLC

#111707315v1